Johnson, J.
The statute under which this claim is-made, is the act of 1877 (74 Ohio L. 168). Section 1, which is relied on, reads: “That any person, who shall perform labor, or furnish machinery or materials for constructing,, altering, or repairing any boat, vessel, or other water-craft, or for erecting, altering, repairing, or removing any house, mill, manufactory, or other building, fixture, bridge, or other-structure, by virtue of a contract with the owner or owners, his or their authorized agents, shall have a lien to secure the payment of the same, upon such boat, vessel, or other-water-craft, or upon such house, mill, manufactory, or other-building or appurtenance, fixture, bridge, or other structure, and the interest of said owner or owners in the lot of land on which the same shall stand or be removed to.”
The second section provides for the mode of perfecting-this lien, by filing with “ the recorder of the county where-said labor was performed, or machinery or materials were-furnished,” an affidavit to an itemized account,, and copy *562 -of contract, if in writing, and a description of the land on which, said improvement “ shall stand or be removed to,” :and the claim then becomes a lien from the date of the first item of the account, on the designated property, “ and the interest of the owner in the Jot of land on which the ■same shall stand or be removed to.”
The first section manifestly relates to such structures as have a definite locality.
The words house, mill, manufactory or other building, and the words fixture and bridge, each imports, an improvement on a lot of land on which it stands or may be removed to, and the requirement that the lien shall describe the land on which it stands, and shall be recorded in the county where the labor was performed, or machinery or materials were furnished; all point unequivocally to •structures having a certain locality, on which they are ■erected, and from which they may be removed.
There is no provision, as in case of mortgages, for recording these liens in several counties, as would be neees-sary, if they apply to a continuous line of railroad, extending, as this does, through several counties.
This view is strongly supported, by considering the provisions of section 3 of said act, which provides, in favor of a head contractor, a lien on a class of improvements of the same nature as railroads. There, a lien is given to any persou who shall perform labor or furnish materials for constructing, altering, or repairing any street, turnpike, road, sidwalk, way, or drain, ditch or sewer, under a“ private contract with the owner, upon the abutting lands, etc.
Plaintiffs do not claim a lien under this section, but it is ■cited here to show that the act provides for contractor’s liens on two classes of improvements: the one relating to buildings, fixtures, bridges, and other structures standing on a lot of land; the other to improvements of a different class, which, like railroads, are continuous from point to point, such as roads, ways, turnpikes, etc. In the former class, the lien is upon the designated structure and the lot or land on which it stands, which must b¿ specifically de *563 •scribed in tbe lien; while in the latter, it is upon abutting lots or lands along the lines of the improvement, which lands must be described with the feet frontage of •each owner.
Section 10 provides to sub-contractors, laborers, and ■other middie-men, a mode of securing their dues, by stopping the pay coming to the head contractor.
This provision extends only to the class of improvements described in the 1st and 3d sections of the act. ¡Subsequent sections provide for enforcing payment by a lien which are not material to the case before us. The act omits tbe word railroad, which was in original section 2, ■as amended in 1871 and 1875, as hereafter shown.
This act was intended as a revision, as well as an amendment of prior acts on the same subject; and it repeals them, to wit: the acts of 1843, 1871, and 1875.
The plaintiffs’ claim is made under section 1, above recited, and is: 1. That a railroad, though not named, is a .structure, within the meaning of the term “ or other structure,” following the words “fixture” and “ bridge;” 2. If this is not so, then an express lien is given on all the bridges built by plaintiffs on the line, and the case should go to a master, to ascertain the cost of these bridges, and decree a lien to that extent.
1. Is a railroad a structure, within the meaning of section 1 of this act?
That it is a structure, within the general signification of that term, may be conceded. But a reasonable application of the maxim, noseitur a sociis, when construing the sentence, “ erecting, altering, repairing, or removing any house, mill, manufactory, or other building or fixture, bridge or other structure,” taken in connection with the provisions that the lieu is to be on the same, and on the lot of ■land on which it stands or shall be removed to; and the further provision that the lien shall be recorded in the county where the work is done, or materials or machinery is fornished, would, to our minds, lead clearly to the conclusion that this phrase “ other structures ” must be limited to *564 improvements of the same class as those specifically named,, and can not be extended so as to include a railroad.
Again, to call a strip of land, for a right of way for a railroad from Cincinnati to Portmouth, a lot of land,, would be a misnomer.
If a railroad is a structure, within the meaning of this statute, then so is a common road, a turnpike, and all other improvements named in section 3, for which a special lien is given on the abutting lands, and we would have two liens for the same claim, the one on the lot of land, the other on the abutting property.
A brief summary of the previous legislation on this subject demonstrates the correctness of our conclusion, and precludes the idea that it was the intention to provide for a lien upon railroads.
The first general statute on the subject was the act of 1843 (1 S. & C. 833), and gave to the contractor a lien “for constructing, altering or repairing any house, mill, manufactory, or other building, or appurtenance” on the same, “ and the lot of land upon which the same shall stand.”
The 2d section provided for middlemen, in the same-class of cases, by notice to the owner, under which the amount due the head contractor could be intercepted.
This section was amended in 1871 (68 Ohio Laws, 107), and this right of middlemen was extended far beyond that of the head contractor, as to the class of improvements. It gave to the mechanic or other person the right to stop payments due the head contractor, for work or materials in the erection, construction, alteration or repair of any “house, mill, distillery, bridge, manufactory, fixture, road, turnpike, street, sewer, ditch, railroad, or other structure, building or appurtenance.”
. This gave to the middleman a lien on a railroad in express terms, but no such lien existed in favor of the head contractor.
The practical difficulty of enforcing such a lien against “ the lot of land on which the same shall stand,” in case of work done on roads, turnpikes, streets, sewers, ditches, etc., *565 -as provided in this amendment, doubtless led the legislature in 1877, to change this provision and give the lien on -the abutting property; and to omit railroads, altogether, from the list of structures for which such liens were provided.
In 1875 (72 Ohio Laws, 166), section 1 of the act was • ■amended, giving to contractors a lien for removing, raising .and lowering any of the buildings named in the original .act, as well as for constructing, altering or repairing the same, and on the lot of land on which the same shall stand, ■or be moved to.
At the same time section 2 was also amended in the same respect by adding the words “ removal, raising, low•ering.”
These acts were repealed by said act of 1877, which, as we have seen, makes full provision for the class of cases embraced within it, in favor both of contractors and middle-men.
From 1871 to 1877, therefore, middlemen were secured for work and materials in case of railroads. Owing, as we suppose, to the difficulty of working out and enforcing this lien on such works, because of the fact that they were generally covered by mortgages before they were completed or even begun, and of the numerous conflicting claimants, the act of March 31, 1874 (71 Ohio L. 71), was passed, providing a special remedy — “ to secure pay to persons performing labor or furnishing materials in constructing railroads.” Its provisions are new and comprehensive, and were evidently intended as fully accomplishing the intention expressed in the title.
From 1874 to 1877 middle-men had, therefore, a double provision made for them, first by this act, and also by section 2-of the lien law, as amended in 1871 and 1875.
The statute of 1877 omitted railroads, doubtless, for the reasons stated as well as for the additional one — that this act of 1874, which was left in force, gave a sufficient remedy. It thus appears that this was no mere eassus omissus. The mind of the legislature was frequently di *566 rected to the subject, and after retaining railroads in the-2d section from 1871 to 1877, for the benefit of middlemen, it was deliberately omitted from the act 1877.
This omission is significant, and to our minds, conclusive, that the words, “ other structure,” which then first appears, in favor of head contractors, does not include a railroad.
The practical difficulty, and I might say the impossibility, of enforcing such lieDs on a line of railroad extending for long distances, constructed in sections as is the-usual mode, by different contractors, each of whom might assert, as in this case, a lien on the whole line, or, at least,, on the part he constructed, is apparent.
Again, the law authorizes a mortgage on the line of road to be constructed and the franchises, as well as the road when completed, to aid in its construction.
It is a part of the history of railroad building in this-state, that this mode of raising capital is generally resorted to. Such works require a large amount of capital, which could not be raised except oh bond and mortgage. This-can not be done if this lien existed, unless the mortgage-was recorded before work was commenced, or after it'was-fully paid for.
It has always been the policy of our legislature to encourage the construction of railroads as aids to the development of the resources of the state. Hence the legislation which permits such mortgages to aid in their construction.
The security which capital requires, and which was intended to be given by making such mortgages for completing the line of road as well as other purposes, not only on the property and franchises of the corporation then existing, but also on all after-acquired property and income (70 Ohio L. 291), a first lien on such property, forbids the-idea of a mechanic’s lien. It would defeat all efforts to-negotiate bonds, for no one would purchase them if the-entire cost of construction could thus be made a prior lien.
2. It is claimed that such lien is expressly given on the- *567 bridges constructed by plaintiffs, as the word bridge is found in the statute.
It is enough to say that no such claim is made iu the pleadings. The only point presented by the record is properly stated by plaintiffs’ counsel in these words: “Can a mechanic’s lien be taken on a railroad of the kind set out in the pleadings, under the laws of the State of Ohio?” The lien sought is on a strip of land from Cincinnati to Portsmouth, and the railroad constructed and projected thereon,, including bridges, culverts, trestles, aud every thing necessary to a completed road. No bridges are specified, nor is any lot of laud on which they stand described. The petition does not state the cost of these bridges, nor pray for a lien thereon, but upon the railroad as an entirety.
Whether or not such a lien could be taken upon a railroad bridge, built under a specific contract for that purpose,, is not decided.

Judgment affirmed, and cause remanded.